UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTA M. TALBOT,[1]<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. SACV 14-1935 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

## I. SUMMARY

On December 5, 2014, Christa M. Talbot ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; December 9, 2014 Case Management Order ¶ 5.

---

[1] As all of the pleadings in this action (including the originating Complaint), spell plaintiff's last name as captioned above, the Court adopts such spelling but notes that plaintiff herself appears to spell her last name "Talbott." (AR 268, 277).

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Pursuant to an application for Disability Insurance Benefits ("DIB"), on or about March 7, 2003, plaintiff was initially found to be disabled beginning on December 6, 2002, based on a finding that plaintiff had the medically determinable impairment of a mood disorder that met the requirements of Listing 12.04 via subsections A and B of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d)).  (Administrative Record ("AR") 25, 104).  The most recent favorable medical decision which found plaintiff to be disabled (*i.e.*, "comparison point decision" or "CPD") was dated March 7, 2003.  (AR 25, 104).

On September 22, 2011, it was determined that plaintiff was no longer disabled as of September 1, 2011 and that plaintiff's benefits would be terminated on November 30, 2011.  (AR 23, 109).  On August 3, 2012, plaintiff requested a hearing before an Administrative Law Judge.  (AR 23, 153).

On April 24, 2013, the ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), a vocational expert, a medical expert, a psychological expert, and plaintiff's mother.  (AR 40-102).  On June 24, 2013, the ALJ essentially determined that plaintiff's disability "ended as of September 1, 2011" and that plaintiff had not become disabled again through the date of the decision.  (AR 23-34).  Specifically, the ALJ found that beginning on September 1, 2011 (1) plaintiff suffered from the following severe medically determinable impairment or combination of impairments:  mood disorder – not otherwise specified, with anxious and depressive features, borderline personality disorder, history of marijuana abuse, peripheral neuropathy, neuralgic parasectia [sic], mononeuritis of the leg, cervical brachial syndrome, cervical discogenic

disease, status post left Achilles repair, and lumber and sacral discogenic disease (AR 26); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 26); (3) there was medical improvement as shown by a decrease in the medical severity of the impairment present at the time of the CPD, and the improvement was related to plaintiff's ability to work (AR 26-28); (4) plaintiff has had the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with additional limitations[2] (AR 28); (4) plaintiff could perform her past relevant work as an administrative assistant and receptionist (AR 33); and (5) plaintiff's allegations regarding the intensity, persistence, and limiting effects of her subjective symptoms were not fully credible or sufficiently supported by the record to warrant the establishment of any limitations beyond the ALJ's residual functional capacity assessment (AR 29).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process – Termination of Benefits

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).

---

[2]The ALJ determined that plaintiff: (i) could not work above shoulder level; (ii) could not operate foot pedals; (iii) could only bend, stoop, and balance occasionally; (iv) could occasionally climb stairs; (v) could not climb ladders, ropes, or scaffolds; (vi) could not work around dangerous or moving machinery; (vii) could not work at unprotected heights; and (viii) was limited to work that involves only moderately complex tasks (SVP 4 or less) in a setting that is low stress (defined as requiring only occasional decision-making, no changes in the work setting, and no inherently stressful work such as taking complaints or working as an emergency medical technician). (AR 28).

Once a claimant is found disabled under the Social Security Act, a presumption of continuing disability arises.  See Bellamy v. Secretary of Health & Human Services, 755 F.2d 1380, 1381 (9th Cir. 1985) (citation omitted).  The Secretary may not terminate benefits unless substantial evidence demonstrates sufficient medical improvement in a claimant's impairment such that the claimant becomes able to engage in substantial gainful activity.  See 42 U.S.C. § 1382c(a)(4)(A); 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594; Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983).

In assessing whether a claimant continues to be disabled, an ALJ must follow an eight-step sequential evaluation process for DIB claims:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, and any applicable trial work period has been completed, the claimant's disability ends.  If not, proceed to step two.

(2) Does the claimant have an impairment, or combination of impairments, which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant's disability continues.  If not, proceed to step three.

(3) Has there been medical improvement as shown by a decrease in the medical severity of the impairment(s) present at the time of the CPD?[3]  If so, proceed to step four.  If not, proceed to step five.

(4) Was any medical improvement related to the ability to work (i.e., has there been an increase in the claimant's residual

---

[3]"Medical improvement" is defined as "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled" (i.e., the CPD). 20 C.F.R. § 404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [a claimant's] impairment(s)." Id.

|   |   |   |
|---|---|---|
|   |   | functional capacity)? If so, proceed to step six. If not, proceed to step five. |
|   | (5) | Is there an exception to medical improvement? If not, the claimant's disability continues. If an exception from the first group of exceptions to medical improvement applies (*i.e.*, substantial evidence shows that the claimant has benefitted from "advances in medical or vocational therapy or technology" or "undergone vocational therapy" if either is "related to [the] ability to work"), see 20 C.F.R. § 404.1594(d), proceed to step six. If an exception from the second group[4] applies (*i.e.*, disability determination was fraudulently obtained, claimant was uncooperative, unable to be found, or failed to follow prescribed treatment), see 20 C.F.R. § 404.1594(e), the claimant's disability ends. |
|   | (6) | Is the claimant's current combination of impairments severe? If so, proceed to step seven. If not, the claimant's disability ends. |
|   | (7) | Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant's disability ends. If not, proceed to step eight. |
|   | (8) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to do other work? If so, the claimant's disability ends. If not, the claimant's disability continues. |

20 C.F.R. § 404.1594(f).

///

---

[4]The second group of exceptions may be considered at any point in the sequential evaluation process. 20 C.F.R. § 404.1594(b)(5).

Although the claimant retains the burden to prove disability, the Commissioner has the burden to produce evidence to meet or rebut the presumption of continuing disability. Bellamy, 755 F.2d at 1381 (citation omitted).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Courts review only the reasons provided in the ALJ's decision, and the decision may not be affirmed on a ground upon which the ALJ did not rely. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)). To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

Even when an ALJ's decision contains error, it must still be affirmed if the error was harmless. Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014). An ALJ's error is harmless if (1) it was

inconsequential to the ultimate nondisability determination; or (2) the ALJ's path may reasonably be discerned, even if the ALJ explains the ALJ's decision with less than ideal clarity.  Id. (citation, quotation marks and internal quotations marks omitted).

A reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless.  Brown-Hunter v. Colvin, __ F.3d __, 2015 WL 462013, *3 (9th Cir. Aug. 4, 2015) (No. 13-15213)[5] (citing Stout, 454 F.3d at 1054); see also Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015) (district court may not use harmless error analysis to affirm decision on ground not invoked by ALJ) (citation omitted).  Where a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate.  See Marsh, 792 F.3d at 1173 (remanding for additional explanation where ALJ ignored treating doctor's opinion and court not could not confidently conclude ALJ's error was harmless); Treichler, 775 F.2d at 1099-1102 (where agency errs in reaching decision to deny benefits and error is not harmless, remand for additional investigation or explanation ordinarily appropriate).

**IV. DISCUSSION**

Plaintiff contends that a remand or reversal is warranted because the ALJ inadequately evaluated the credibility of her subjective complaints.  (Plaintiff's Motion at 5-10).  In light of the binding authorities discussed below, the Court is compelled to agree and concludes that a remand is appropriate.

///
///
///

---

[5]The Court takes judicial notice of the Ninth Circuit's docket in Brown-Hunter which reflects that a petition for rehearing is pending in such case.  Fed. R. Evid. 201.

### A. Pertinent Law

When a claimant provides objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, and there has not been an affirmative finding that the claimant is malingering, the ALJ may discount the credibility of the claimant's statements regarding subjective symptoms only by offering specific, clear and convincing reasons for doing so supported by substantial evidence. Brown-Hunter, 2015 WL 4620123, at *5 (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). This requirement is very difficult to meet. See Garrison, 759 F.3d at 1015 ("The clear and convincing standard is the most demanding required in Social Security cases.") (citation and internal quotation marks omitted). An ALJ must identify the specific testimony that lacks credibility, provide clear and convincing reasons why the testimony is not credible, and identify the specific evidence in the record which supports the ALJ's determination. See, e.g., Brown-Hunter, 2015 WL 4620123, at *1, *6 (finding legal error where ALJ failed to identify testimony she found not credible and failed "[to] link that testimony to the particular parts of the record supporting her non-credibility determination") (citing Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014)). An ALJ's finding that a claimant's testimony is not credible must be sufficiently specific enough to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's subjective complaints. Id. at *5 (citing Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc)) (quotation marks omitted). General findings are insufficient. Id. (citing Reddick, 157 F.3d at 722) (quotation marks omitted).

To find a claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the claimant's statements and testimony, or conflicts between the

claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling 96-7p.

If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted); see also Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (Evaluation of a claimant's credibility and resolution of conflicts in the testimony are solely functions of the Commissioner.) (citation omitted).

**B.  Analysis**

Defendant argues that the ALJ "more than adequately provided valid rationale for finding plaintiff not fully credible." (Defendant's Motion at 7-11). Based upon the binding authority above, the Court is compelled to disagree.

First, defendant contends that the ALJ properly discredited plaintiff's testimony that she spent most of the day lying down because such testimony conflicted with the "complete lack of" any evidence of muscle atrophy. (Defendant's Motion at 8) (citing AR 30, 31, 84). However, the ALJ referenced lack of muscle atrophy when discrediting medical opinions, not when assessing the credibility of *plaintiff's* statements. (AR 30-31) (citing Exhibit 14F [AR 717-21] [March 2, 2012 Report of Orthopedic Consultation by Dr. Ibrahim Yashruti]; Exhibit 21F at 2 (AR 825) [April 22, 2013 Physical Capacities Evaluation by Dr. Amir A. Pouradib]).

Second, the ALJ did not, as defendant suggests, specifically find that plaintiff's statements regarding "difficulty with completing tasks and following instructions" conflicted with "[plaintiff's] unremarkable mental status examination and her earnings record." (Defendant's Motion at 9) (citing AR 32-33, 78). The section of the ALJ's decision that defendant cites as supporting such a conflict

actually addressed the credibility of evidence provided by third-party witnesses (*i.e.*, plaintiff's part-time employer and parents), not *plaintiff's* testimony.  For example, although the ALJ found it "unlikely that [plaintiff did] not work her scheduled shifts on a regular basis" – considering plaintiff's earnings record and other medical evidence (AR 33) – the ALJ cited such finding because it purportedly was inconsistent with plaintiff's *mother's* testimony that she would often work plaintiff's shifts because plaintiff "would miss a few days of work every month." (AR 32-33).

Third, as defendant suggests, the ALJ did say plaintiff's testimony that she "currently works only 4 hours per day one day per week" *seemed* to be "an understatement of plaintiff's actual earnings and work activity" given plaintiff's earning records.  (AR 25).  Nonetheless, the ALJ made this statement at step one, not when assessing plaintiff's credibility, and in any event, appeared to resolve any seeming conflict in plaintiff's favor – *i.e.*, finding that, despite plaintiff's earning records, plaintiff had not engaged in substantial gainful activity during the relevant time period.

Fourth, as defendant points out, the ALJ also stated that "contrary to her testimony during the hearing [plaintiff] told her therapist that she was working 17 hours a week at the bead store." (AR 27) (citing Exhibit 20F at 24 [AR 804]). The treatment note the ALJ cited as purportedly conflicting with plaintiff's hearing testimony, however, was from August 2012, several months before the April 2013 hearing. (Compare AR 804 with AR 40).  In addition, the ALJ acknowledged that in January 2013 plaintiff "report[ed] her hours had been cut at work." (AR 27) (citing Exhibit 20F at 14 [AR 794]). Nonetheless, the ALJ also suggested that the cut in plaintiff's hours was not material because plaintiff "did not indicate [that the] reduction was due to her impairment-related difficulties," plaintiff actually "appeared to be frustrated about working fewer hours," and plaintiff "was motivated to find work somewhere else." (AR 27) (citing Exhibit

20F at 14 [AR 794]). The January 2013 treatment note the ALJ referenced, however, appears to reflect that plaintiff was actually "non committal" about finding work elsewhere, and that it was plaintiff's therapist who recommended that plaintiff apply for a Goodwill Industries program that helps disabled individuals find part-time jobs. (AR 794). In any event, it is not clear that the ALJ intended his findings regarding plaintiff's employment history to apply outside the context of his evaluation of medical improvement in connection with step three and his consideration of third-party evidence – the sections of the decision where such findings were primarily addressed. (AR 27, 33). Thus, to the extent there were inconsistencies in plaintiff's statements regarding her employment history, the Court cannot conclude that the ALJ's findings regarding such conflicts constituted "specific, clear and convincing" reasons, supported by substantial evidence, for discounting *plaintiff's* credibility. Cf., e.g., Burrell, 775 F.3d at 1138 (ALJ's identification of conflict between claimant's hearing testimony and other statements made "in passing" and "in a different section than the credibility determination" insufficient to meet "requirements of specificity"); Robbins, 466 F.3d at 884 (cursory finding of conflicts in testimony "without further corroboration or explanation" insufficient to support adverse credibility finding) (citation and footnote omitted).

Fifth, as defendant notes (Defendant's Motion at 9-10), the ALJ characterized plaintiff's daily activities as "fairly full and normal," noting that plaintiff "lives alone and is able to take care of her personal needs, drive on her own, do most household chores, [] engage in hobbies such as jewelry-making," and have lunch with a friend on a weekly basis. (AR 27-28). "Inconsistencies between a claimant's testimony and the claimant's reported activities [may] provide a valid reason for an adverse credibility determination." Burrell, 775 F.3d at 1137-38 (citation omitted). It is unclear whether the ALJ's reference to such evidence in connection with his evaluation at steps three and four was intended to

do more than support the ALJ's finding that there had been medical improvement related to plaintiff's ability to work.  Even if the ALJ intended to find that such daily activities undermined the credibility of plaintiff's subjective complaints, the ALJ did not specify *which* of plaintiff's daily activities purportedly conflicted with *which* of plaintiff's subjective complaints.  A general finding that plaintiff's collective daily activities are inconsistent with the alleged severity of some or all of plaintiff's subjective complaints is not sufficiently specific to permit the Court to determine whether the ALJ discounted plaintiff's credibility on permissible grounds.  See, e.g., Brown-Hunter, 2015 WL 4620123, at *6 (legal error where ALJ fails to link claimant's testimony ALJ found not credible to particular parts of the record supporting non-credibility determination (citing Burrell, 775 F.3d at 1139); Burrell, 775 F.3d at 1138-39 (rejecting Commissioner's argument that conflicts between claimant's complaints of headaches and treatment records for such headaches was a specific, clear, and convincing reason to support ALJ's credibility finding, where the ALJ never stated that rejection of plaintiff's allegations regarding headaches specifically rested on finding that claimant's treatment records for such headaches were inadequate).  While the record may, as defendant suggests (Defendant's Motion at 8-10), contain specific conflicts between plaintiff's daily activities and plaintiff's testimony that could impact the credibility of such testimony, the ALJ did not find as much.  See Brown-Hunter, 2015 WL 4620123, at *6 ("[W]e are constrained to review the reasons the ALJ asserts.") (quoting Connett, 340 F.3d at 874).

Sixth, absent any other clear and convincing reason for discounting plaintiff's credibility, the ALJ's primary proffered reason – lack of objective medical evidence to support plaintiff's subjective complaints (AR 29-30) – is insufficient to support the ALJ's credibility determination.  See Burch, 400 F.3d at 681 (Lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony.).

1    Finally, since the ALJ's reasons for discrediting plaintiff's subjective
2 complaints were not sufficiently specific, the Court is unable to conduct a
3 meaningful review of the ALJ's credibility determination, and thus cannot
4 conclude that the ALJ's errors were harmless. Thus remand is appropriate to
5 permit the ALJ to reassess plaintiff's credibility and/or more specifically to state
6 the reasons for finding such testimony not credible so as to enable the Court to
7 conduct a meaningful review. See Marsh, 792 F.3d at 1173 (citation omitted); cf.,
8 e.g., Brown-Hunter, 2015 WL 4620123, at *4 (where ALJ fails to specify reasons
9 for finding claimant testimony not credible, "[ALJ's] error will never be
10 harmless") (citing Treichler, 775 F.3d at 1103).

## V. CONCLUSION[6]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[7]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 30, 2015

                                             /s/
                                     Honorable Jacqueline Chooljian
                                     UNITED STATES MAGISTRATE JUDGE

---

[6] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[7] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).